**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ADVANCED ENVIRONMENTAL** | § | |
| **RECYCLING TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:08-CV-0837-O** |
| | § | |
| **AMERICAN INTERNATIONAL** | § | **ECF** |
| **SPECIALTY LINES INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**Memorandum Opinion and Order**

Before the Court are the following:

1.)   Plaintiff Advanced Environmental Recycling Technologies Inc.'s (hereinafter, "AERT" or "Plaintiff") Motion for Partial Summary Judgment ("Pl. Mtn.") (Doc. # 15), its Brief in Support thereof ("Pl. Br.") (Doc. # 16), and Appendix filed in Support ("Pl. App.") (Doc. # 17);

2.)   Defendant American International Specialty Lines Insurance Company's ("AISLIC" or "Defendant") Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 22), Appendix in support thereof ("Def. App."), and its Brief in Support ("Def. Br.") (Doc. # 23);

3.)   Plaintiff's Response in Opposition to Defendant's Cross Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment ("Pl. Resp.") (Doc. # 27), and Brief in Support thereof ("Pl. Resp. Br.") (Doc. # 28);

4.)   Defendant's Reply in Support of Summary Judgment ("Def. Reply") (Doc. # 29);

5.)   Defendant's Motion for Leave to File Supplement the Appendix in Support of its Cross Motion for Summary Judgment Instanter (Doc. # 34) and Brief in Support (Doc. # 35);

6.)   Plaintiff's Response in Opposition to Defendant's Motion for Leave to File Supplement and Motion to Strike Motion for Leave to File or Motion for Leave to

file Sur-Reply (Doc. # 36).[1]

Having carefully considered the pleadings, evidence and applicable law, the Court finds as follows.

## I.    Background

In this insurance coverage declaratory judgment action, Plaintiff AERT seeks summary judgment declaring that its insurer, Defendant AISLIC, [2] is obligated to defend it in a separate lawsuit.  AERT also moves for summary judgment on its claims of breach of contract and violation of Chapter 542 of the Texas Insurance Code. In response, AISLIC has filed a cross-motion for summary judgment contending that it owes no duty to defend AERT because the insurance policies it issued AERT do not provide coverage from the claims brought in the underlying lawsuit.

### A.    The Underlying Lawsuit

Except where otherwise noted, the following facts are uncontroverted for purposes of the parties' respective motions.  AERT is a manufacturer of recycled wood composite building products, including decking and other exterior products.  AERT was named a defendant in two

---

[1] As an initial matter, the Court grants both Defendant's Motion for Leave to File Supplement the Appendix in Support of its Cross Motion for Summary Judgment Instanter (Doc. # 34) and Plaintiff's Motion for Leave to file Sur-Reply (Doc. # 36), filed in the alternative.  The Court deems Defendant's Supplemental Appendix ("hereinafter "Def. Supp. App."), attached as exhibits to the motion, filed. The Court also deems Plaintiff's Sur-Reply, attached as an exhibit to the motion, filed. In exercising its discretion to permit the filing of Plaintiff's Sur-Reply, the Court discerns no palpable injustice in considering Defendant's newly filed supporting materials because Plaintiff has been an afforded an opportunity to respond. *See Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991).

[2] Diversity of citizenship exists in this case.  Plaintiff is a corporation incorporated under the laws of Delaware with its principal place of business in Springdale, Arkansas. Def. App. 216. Defendant is a corporation incorporated under the laws of Illinois with its principal place of business in Chicago, IL. Def. App. 227.

separate lawsuits (hereinafter, "the Underlying Lawsuits") filed in the United States District Court for the Western District of Washington, which have now been consolidated into one action currently pending in that court.[3]  Plaintiffs in the underlying lawsuits, customers of AERT's decking and other products at various times from January 2004 until the suit was filed in May 2008, seek damages based on allegations that AERT's products are vulnerable to mold, mildew and other fungal growth resulting in extensive discoloration as manifested by unsightly gray and black stains even when properly installed and maintained.  Pl. App. 057 - 058.  They allege that AERT's products are defectively designed and manufactured, and they further alleged that AERT had widespread knowledge of such defects.  Pl. App. 060.  The plaintiffs to the underlying lawsuits do not, however, allege damage to property other than AERT's products.

AISLIC denied coverage for the underlying lawsuits.  *See, e.g.,* Pl. App. 296 - 309 (denying coverage under the primary and umbrella policies in the *Jamruk* litigation).

### B.  The Parties' Arguments

As previously stated, AERT argues that AISLIC is obligated to defend it in the underlying lawsuit.  Specifically, AERT asserts that the facts alleged in the underlying lawsuits trigger a duty to defend by AISLIC based on the provisions of "Coverage B" of the Umbrella Policies because those provisions expressly apply to damages not insured in the Underlying Policies.  *See generally*, Pl. Br. and Pl. Resp. Br.  In addition, AERT asserts that the exclusions relied upon by AISLIC to deny coverage do not apply to "Coverage B."

On the other hand, AISLIC disputes that it has such a duty and contends that the claims

---

[3] The lawsuits were filed in the U.S. District Court for the Western District of Washington, *Pelletz v. Weyerhaeuser Company, et. al.*, No. 2:08-CV-00334-JCC and *Jamruk v. AERT, Inc. et. al.*, No. C:08-0403JLR.  Pl. App. 003-052.  The cases in their consolidated posture are found in Pl. App. 053-073.

in the underlying lawsuit invoke the terms, exclusions and endorsements of the Umbrella Policy which effectively bar coverage of AERT's claims. *See generally,* Def. Br. AISLIC denies that it breached the insurance policies at issue and denies that AERT is entitled to the damages, costs and attorney's fees it seeks.

In the matter before the Court, AERT has only alleged that the duty to defend arises under the Umbrella Policies. *See* Pl. Pl. Br. at 2; *see also*, First Amend. Compl. ¶ 28 (Doc. # 8). AERT concedes that the primary, underlying, policies issued by AISLIC do not obligate AISLIC to defend AERT from the Underlying Lawsuit. *See e.g.,* Pl. Mtn. at 1 ("AISLIC's contracts with AERT obligate AISLIC to defend any claim or suit against AERT for damages arising from property damage covered by AISLIC's umbrella policies but not covered by underlying insurance . . ."); Pl. Br. at 2 ("the policies under which AERT is seeking a defense are "umbrella" policies, which . . . also insure, among other things, property damage that is not covered by the underlying primary insurance."). The fulcrum of this dispute, then, is whether "Coverage B" of the Underlying Policies obligates the insurer, AISLIC, to defend the insured, AERT, from the underlying lawsuit.

### C.    The Policies

There is no dispute that AERT and AISLIC entered into valid and enforceable commercial contracts. AISLIC issued the following commercial insurance "occurrence" policies[4] to AERT:

1)      Commercial General Liability Policy ("Underlying Policy") No. EGU 3779905 (Def.

---

[4] Courts traditionally distinguish between two types of insurance policies: "occurrence" and "claims made" policies. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658, n. 2 (5th Cir. 1999). In the present case, the evidence demonstrates that the policies in question were for "occurrence." *See, e.g.,* Pl. App. 080.

App. 003-054), for the period from May 5, 2003 to May 5, 2004, with an accompanying Commercial Umbrella Policy ("Umbrella Policy") No. EGU 3779906 (Pl. App. 077-100);

2)      Underlying Policy No. EGU 1956239 (Def. App. 055-105) for the period from May 5, 2004 to May 5, 2005, with an accompanying Umbrella Policy No. EGU1956240 (Pl. App. 101-128);

3)      Underlying Policy No. EGU 1425547 (Def. App. 106-155) for the period from May 5, 2005 to May 5, 2006, with an accompanying Umbrella Policy No. EGU 1425628 (Pl. App. 129-158);

4)      Underlying Policy No. EGU 1809329 (Def. App. 156-213) for the period from May 5, 2006 to May 5, 2007, with an accompanying Umbrella Policy No. EGU 1809358 (Pl. App. 159-183);

5)      Underlying Policy No. EGU 2338379 (Pl. App. 218-295) for the period from May 5, 2007 to May 5, 2008, with an accompanying Umbrella Policy No. EGU 2338821 (Pl. App. 184-217).

The Underlying Policies and the Umbrella Policies insure AERT's operations in Arkansas, Texas and Louisiana.  The parties do not dispute that the subsequent renewals each year of the previous year's policies result in virtually identical policies from year to year.  *See* First. Amend. Compl. ¶ 27.  Additionally, the parties do not dispute the language utilized in the policies, but they do differ as to interpretation thereof.  As the Court will ultimately rely upon the policies in determining whether they trigger such an obligation, it is necessary to lay out the specific provisions at issue.

### 1.      *The Underlying Policies*

The Underlying Policies issued by AISLIC to AERT contain the following Insuring Agreement:

SECTION I - COVERAGES

COVERAGE A. - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this Coverage applies.  We will have the right and duty to defend any suit seeking those damages.  However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this Coverage does not apply.

\*          \*          \*

b. This insurance applies to bodily injury and property damage only if:

(1) the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

(2) The bodily injury or property damage occurs during the policy period.

The Underlying Policies contain the following exclusions:

2.      Exclusions

This insurance does not apply to:

l.) Damage to Your Product

Property damage to your product arising out of it or any part of it.

Def. App. 005-008, 057-060, 108-111, 158-161, and Pl. App. 220-223.

The Underlying  Policies  contain the following definitions:

VI.  DEFINITIONS

20.      Occurrence means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.

28.      Property damage means, with respect to Coverages A and B:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the Occurrence that caused it.

6

Property damage means, with respect to Coverages D-1 and D-2:

d.      Physical injury to or destruction of tangible property of parties other than the insured including the resulting loss of use or value thereof; or

e.      Loss of use, but not loss of value, of tangible property of parties other than the insured that has not been physically injured or destroyed.

Property damage does not include Clean-up costs.

32.    Your Product means:

a.      Any goods or products other than real property, manufactured, sold, handled, distributed or disposed by:
        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have acquired; and

*       *       *

Your product includes:

a.      Warranties or representations made at any time with respect to fitness, quality, durability, performance or use of your product; and

b.      The providing of or failure to provide warnings or instructions.

Def. App. 026-028, 076-080, 127-131, 177-181; Pl. App. 239-243.

## 2.    *The Umbrella Policies*

The Umbrella Policies contain the following Insuring Agreement with respect to coverage:

I.      COVERAGES

COVERAGE A. -  EXCESS FOLLOWING FORM LIABILITY INSURANCE

7

We will pay on behalf of the insured that portion of ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury, advertising injury, cleanup costs or loss to which this insurance applies, due to:

      1.    liability imposed upon the insured by law or
      2.    liability assumed by the insured under an insured contract.

This Coverage A. applies to ultimate net loss resulting from bodily injury, property damage, personal injury, advertising injury, cleanup costs or loss only if and to the extent covered by underlying insurance.  The insurance afforded under this Coverage A. is subject to the same insuring agreements, exclusions, definitions and conditions contained in the underlying insurance in effect on the inception date of this policy, except as to premium, duty to defend, limits of liability and notice, and except as to any other provisions in this policy inconsistent with those in the underlying insurance.

COVERAGE B. - UMBRELLA LIABILITY INSURANCE

We will pay on behalf of the insured that portion of ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies, due to:

      1.    liability imposed upon the insured by law or
      2.    liability assumed by the insured under an insured contract.

This Coverage B. applies to ultimate net loss resulting from:

      1.    Bodily injury or property damage caused by an occurrence happening anywhere in the world, provided the bodily injury or property damage occurs during the policy period; or
      2.    Personal injury or advertising injury caused by an offense happening anywhere in the world, provided the offense was committed during the policy period.

This Coverage B. does not apply to any claim or suit covered by underlying insurance of which would have been covered by underlying insurance but for the exhaustion of the limits of insurance of underlying insurance.

    *     *     *     *     *

8

III.   EXCLUSIONS

In addition to any applicable Exclusions in the underlying insurance, this policy does not apply to:

\*       \*       \*       \*       \*

H.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

1.    Your product;
2.    Your work; or
3.    Impaired property;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Pl. App. 086-090, 103-107, 130-134, 170-174, 186-190.  Definitions for the terms "your product," "your work," and "occurrence" as used in the Umbrella Policies are the same as used in the Underlying Policies.

## II.   *Legal Standard for Summary Judgment*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

9

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the Defendant is proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### III.     *Analysis*

#### A.      *Choice of Law*

10

Before turning to the substance of the parties' motions for summary judgment, the Court will determine what law applies to their respective claims.  The parties have briefed their arguments on choice of law in connection with their respective claims for declaratory judgment on the duty to defend.  The Court considers these arguments, as well as the relevant evidence produced with the parties' summary judgment filings, in determining what law applies to their competing claims for summary judgment.

### 1.    *Existing Conflict*

This case is properly before the Court on the basis of diversity jurisdiction.  In determining the substantive law to be applied to the particular facts of this case, the Court applies the choice of law rules of Texas, the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990); *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985). Texas only requires a choice of law analysis if the respective states' laws in question conflict on a disputed substantive issue. *Greenburg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 69-70 (Tex. App. – Houston [14th Dist.] 2004, no pet.); *see also, Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (citing *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

The substantive issues in this dispute involve interpretation of insurance policies, specifically whether AISLIC has a duty to defend AERT in the underlying lawsuit. Both parties assert that a conflict of laws exists between the relevant legal authorities in Arkansas and Texas.[5]

_____

[5] AERT initially argued that no such conflict exists between Arkansas and Texas because the law relating to an insurance carrier's duty to defend underlying litigation in either state is substantially the same.  Pl. Br. at 13-15.  However, AERT later appeared to abandon this argument when responding to AISLIC's assertion that Arkansas law applied.  Pl. Resp. Br. 10-14.

On the one hand, AERT asserts that exercising the appropriate choice of law factors results in application Texas law.  On the other hand, AISLIC contends that doing so results in a reliance upon Arkansas law. Having reviewed the record and the applicable law, the Court is convinced that Arkansas and Texas laws conflict on the substantive issue in this case. In reaching this conclusion, the Court observes that the two states differ as to the substantive issue, and what will ultimately become the determinant in this case: whether the facts alleged in the underlying lawsuit constitute an "occurrence" triggering the duty to defend.

### 2.     *Conflicts of Law Analysis*

Texas courts use the "most significant relationship" test to decide choice-of-law issues in a contract action if, as here, the parties did not expressly designate a choice of law. *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008). Under the test, the law of the state with "the most significant relationship to the particular substantive issue" shall govern the dispute. *Atlantic Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1291 (5th Cir. 1986) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). The test is based on factors outlined in the Restatement (Second) of Conflicts.[6]  Section 188 of the Restatement outlines the factors courts are to consider when deciding a claim arising from a contract, including (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile,

---

[6]Section 6 of the Restatement sets forth general choice-of-law principles, under which courts consider (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. *See Restatement (Second) of Conflict of Laws* § 6(2) (1971).

residence, nationality, place of incorporation, and place of business of the parties. *Coachmen Indus. v. Willis of Ill*., *Inc*., Civ.A.No. H-06-0892, 2008 U.S. Dist. LEXIS 34712, *5 (S.D. Tex. Apr. 28, 2008)*; 3M  v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997); *Restatement (Second) Conflict of Laws* § 188(2). The Court's analysis does not "turn on the number of contacts, but more importantly on the qualitative nature of those contacts." *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979).

AERT correctly contends that the particular substantive issue in this case is whether AISLIC has a duty to defend. Pl. Resp. Br. at 10.  As such, AERT asserts that the Court should pay particular attention to the underlying lawsuits, including the place of performance and the location of the subject matter of the contract in conducting its analysis of the Section 188 factors. However, this assertion is misplaced.  "[W]hen the issues of a case require the construction and application of insurance policies . . . the relevant inquiry is what contacts the state has with the insurance dispute, and not with an underlying lawsuit." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996); *see also, Insurance Co. v. Circle K Corp*., Civ.A.No. H-95-0051, 1997 U.S. Dist. LEXIS 8516, * 4 (S.D. Tex. 1997); *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, Civ.A.No. 1:07-CV-699, 2008 U.S. Dist. LEXIS 17880, * 9-10 (E.D. Tex. 2008).  Moreover, as AERT initially argued, where an insurance policy provides "nationwide liability coverage, the place of contracting, the place of negotiation, and the domicile, residence, nationality, place of incorporation, and place of business of the parties become the primary factors to determine which law applies." Pl. Br. at 13; citing *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 346 (Tex. App. – Houston [14th Dist.] 2004, pet. denied). With these factors in mind, the Court analyzes the most significant relationship for AISLIC's alleged duty to defend.

###### A.      *Most significant relationship under Section 188 of the Restatement*

###### i.      *Place of Contracting and Place of Negotiation*

AERT argues that the policies in question were negotiated and contracted for in both

Texas and Arkansas. AISLIC argues that the policy producer and agent are located in Arkansas,

but concedes that its underwriter is located in Dallas, Texas. Def. Br. at 13. The evidence on the

record demonstrates that AERT's CFO Edward Lyson applied for liability insurance listing the

Farris Insurance Agency, located in Springdale, Arkansas, as its insurance broker.  Def. Supp.

App. 64.  Roy Fears and Daphne Stevenson, Vice President and an employee, respectively, of

the Farris Insurance Agency, Inc., averred that the Farris Insurance Agency served as the

insurance broker to AERT at all time relevant to this case. *See* Pl. App. 074 (Fears), Pl. App. 317

(Stevenson). The policies were underwritten in Dallas, Texas, Def. Br. at 13, Pl. App. 319, 327,

but were delivered to AERT in Arkansas.  Pl. App. 077 (indicating that the policy period began

at the standard time for the insured's address), Def. App. 003 (indicating that the policy period

began "at 12:01 AM Standard Time at your mailing address").  In sum, the evidence shows that

the policies were solicited by AERT, and delivered to them in Arkansas. The policies were

prepared in Dallas, Texas.

There is convincing caselaw in the U.S. Court of Appeals for the Third Circuit holding

that an insurance contract is made in the state where it is delivered.  *Hammersmith v. TIG Ins.

Co.*, 480 F.3d 220, 233 (3d Cir. 2007).  Here, there is no dispute that delivery was in Arkansas.

Def. Supp. App. 44-45.  In addition, "[t]here is persuasive authority to apply the law of the state

where the insurance agent[/broker] is located when the agent[/broker] has acted to the detriment

either of the insured or the insurer."*Coachmen*, 2008 U.S. Dist. LEXIS at. *18-19, citing

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Energy Ins. Agency, Inc.*, 659 F. Supp. 97, 100 (S.D.

Tex. 1987); see also, *W.R. Grace & Co. v. Continental Casualty Co.*, 896 F.2d 865, 873 (5th Cir. 1990) (considering the location of the broker, among other factors, in determining the most significant relationship).  Here, AERT's broker, the Farris Insurance Agency, is located in Arkansas.  Based on these facts and the relevant authorities, the Court finds that these factors weigh in favor of finding Arkansas has a more significant relationship.

### *ii.*      *Place of Performance*

"When the contract is one of payment, the place of performance seems, in truth, of no particular consequence.  *Houston Cas. Co. v. Certain Underwriters at Lloyd's London*, 51 F. Supp.2d 789, 797-98 (S.D. Tex. 1999).  Moreover, "'[w]hen a contract requires payment of money but does not specify the place of payment, the place of payment is the domicile of the payor." *Id.* (quoting *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 675 (Tex.App.-Dallas 1993, writ dism'd by agr.).  As such, to the extent that this factor has any bearing on the Court's analysis, it would weigh in favor of finding Texas has a more significant relationship.

### *iii.*      *Subject Matter of the Contract*

Courts applying Texas law have held that " the location of the subject matter of the contract [is] neither significant nor determinative in deciding which law to apply to multi-risk insurance contracts," such as in the present case. *Reddy Ice*, 145 S.W.3d at 345; *see also*, *Houston Cas. Co.,* 51 F. Supp.2d at 797 (the location of the disputed losses affected neither the insured's obligation to pay a premium nor the insurer's obligation to indemnify).  As such, the Court does not consider this factor in determining the state with the most significant relationship.

### *iv.*      *Domicile, Residence, Nationality, Place of Incorporation*

AERT argues that Texas is the only state in which both parties enjoy residence because it

is the only state where they have places of business pertinent to the disputed duty to defend.  Pl. Resp. Br. at 13 (stating that the decking products were manufactured, in part, in Texas and that the underwriter employed by AISLIC was located in Dallas, Texas).  However, AISLIC counters that the common places of business is the wrong analytical approach under this factor. AISLIC points out that the Comment on Restatement (Second) diminishes the importance of domicile or place of business, unless combined with other contacts.  Probing the record to determine all of the relevant contacts in this case, the Court finds that most importantly, AERT's principal place of business is in Arkansas.  *See* Comment e., ("a corporation's principal place of business is a more important contact than the place of incorporation").  Additionally, AERT consistently identified multiple properties located in Arkansas and only one property in Texas necessitating insurance coverage.  Def. Supp. App. 048 - 068, *see also*, Pl. App. 276.  While the Court's analysis does not "turn on the number of contacts," *Gutierrez*, 583 S.W.2d at 319, the number of contacts is a significant component in conducting the required qualitative analysis.  In addition, AERT appears to have, at least at the time of its application for liability insurance, generated almost three times more production from its production line in Springdale, Arkansas, as compared to its production line in Texas.  *See* Def. Supp. App. 051-052, 066.  Although the Court considers this as only one of many qualitative factors, it is a data point that nonetheless helps to more fully establish AERT's primary basis of operations, and ultimately its residence in Arkansas. Based on these facts and the relevant law, the Court finds that this factor weighs in favor of finding the most significant relationship is Arkansas.

### B.      Policy Considerations under Section 6 of the Restatement

In addition to the factors outlined above, the record indicates that the insurance policies agreed to by the parties were tailored to comport, in part, with Arkansas law, not Texas. Pl. App.

16

084; Def App. 049. Based on the relevant facts and in light of the policy implications for both Texas and Arkansas, the Court agrees with AISLIC's argument that "Arkansas has the greater interest in the construction of insurance policies issued to commercial entities principally located in Arkansas." Def. Br. at 13.

### 3.    Conclusion on Choice of Law

For the reasons discussed above, the Court concludes that the appropriate law to be applied to the issue of whether the insurance policies triggered a duty to defend should be that of Arkansas.

### B.    Whether AISLIC is Obligated to Defend AERT

### 1.    Legal Standard

The Court now returns to the the contested substantive issue in this matter - whether the commercial liability insurance contracts between the parties necessitate a duty to defend.  In doing so, the Court looks to Arkansas law.

Under Arkansas law, the pleadings in an action against an insured generally determine the insurer's duty to defend. *Madden v. Continental Cas. Co.*, 53 Ark. App. 250, 254 (1996). The duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Commercial Union Ins. Co. of America v. Henshall*, 262 Ark. 117, 123 (1977). This is so regardless of whether those allegations are "groundless, false, or fraudulent." *Tri-State Ins. Co. v. B & L Products, Inc*., 61 Ark.App. 78, 83 (1998). In testing the pleadings to determine if they state a claim within the policy coverage, Arkansas law resolves any doubt in favor of the insured.  *Murphy Oil United States v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 178 (2001).

Additionally, "if the insuring agreement clause defining coverage is the basis of an insurers denial of coverage, the burden is on the insured to prove their claim is covered."

17

*Mid-Continent Cas. Co. v. Sullivan*, 2008 U.S. Dist. LEXIS 104668, * 3 (E.D. Ark. 2008), citing

*Southern Farm Bureau Cas. Ins. Co. v. Fields,* 262 Ark. 144(1977); *Carter v. Bush*, 296 Ark.

261, 266 (1988). "If the insured has carried the burden of proving the insurance policy and the

loss ha[s] been met, the burden is then on insurer to show that the case falls within an exclusion

to the contract." *Id.*, citing  *Life & Cas. Ins. Co. of Tenn. v. Barefield*, 187 Ark. 676, 679 (1933);

*Standard Acc. Ins. Co. v. Christy*, 235 Ark. 415, 417 (1962).

Finally, when reviewing the language of an insurance policy, Arkansas courts adhere to

the long-standing rule that, where terms of the policy are clear and unambiguous, the policy

language controls. *See Essex Ins. Co. v. Holder*, 372 Ark. 535, 537 (2008). Absent statutory rules

to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v.*

*Shelter Mut. Ins. Co.*, 327 Ark. 208, 210 (1997). The language in an insurance policy is to be

construed in its plain, ordinary, and popular sense. *McGrew v. Farm Bureau Mut. Ins. Co.*, 371

Ark. 567, 570 (2007). If the policy language is unambiguous, courts will give effect to its plain

language without resorting to the rules of construction. *Id.*

### 2. *The Parties' Arguments*

As outlined previously, the Umbrella Policies contain two separate insuring agreements

providing different types of coverage.  The first, the "EXCESS FOLLOWING FORM" coverage

is found under Coverage A.  The second is "UMBRELLA LIABILITY" coverage under

Coverage B.  It is undisputed that Coverage A. provides the same type of coverage afforded by

the Underlying Policies, but provides excess limits.  Coverage A. is not the subject of AERT's

claims. What is disputed, however, is the coverage afforded by the provisions Coverage B. It is

also disputed whether there are applicable exclusions that defeat AERT's claims for coverage

under Coverage B.

18

The relevant language of Coverage B. states that it:

> applies to ultimate net loss resulting from:
>
> 1.    Bodily injury or property damage caused by an occurrence happening anywhere in the world, provided the bodily injury or property damage occurs during the policy period

In their respective pleadings, AERT and AISLIC contest the meaning and scope of the term "occurrence." AISLIC argues that the Arkansas Supreme Court case *Essex v. Holder*, *supra*, sustains its position denying coverage because "defective workmanship standing alone - resulting in damages only to the work product itself - is not an occurrence . . ." *Essex*, at 467. *See generally*, Def. Reply. Conversely, AERT contends that "occurrence," which is defined under the Umbrella policies by incorporation as "an accident, including continuous or repeated exposure to the same general harmful conditions," Pl. App. 197, should be interpreted under Arkansas law as "'an event that takes place without one's foresight or expectation.'" Pl. Resp. Br. at 14, citing *United States Fid. & Guar. Co. v. Cont'l Cas. Co.*, 120 S.W.3d 556, 563 (Ark. 2003).

In *Essex*, the Arkansas Supreme Court focused on the accidental nature of an "occurrence" under a commercial general liability policy. The Supreme Court referenced its precedent, *U.S. Fid. & Guar. Co.* - relied upon by AERT - in defining an "accident" as "an event that takes place without one's foresight or expectation . . ." But, the court explicitly reasoned that faulty or defective workmanship is foreseeable and therefore cannot be deemed beyond expectation or accidental. Essex, 370 Ark. at 467. Thus, under *Essex*, faulty or defective workmanship standing alone where the alleged damage is solely to the work product itself, does not constitute an "occurrence" under a commercial liability agreement.

When looking at the pleadings in the underlying lawsuit against AERT - the claims for which it seeks coverage - it is readily apparent that the plaintiffs allege nothing more than damages to AERT's own defective product. Plaintiffs allege that mold and fungi have permanently discolored AERT decking and exterior products because of defective manufacturing by AERT.  Relying upon the reasoning in *Essex*, then, the Court finds that because the alleged damages are to nothing more than AERT's own product, "occurrence"as understood in Coverage B. does not obligate AISLIC's coverage under the policy. Consequently, AERT has not met its burden to prove its claim is covered. *Mid-Continent Cas. Co. v. Sullivan*, 2008 U.S. Dist. LEXIS at * 3.[7]

Despite the Court's finding that AERT has not met its burden of establishing that it's claim is covered, the Court determines that even if AERT had done so, it would not have coverage under the Umbrella Policies because of the applicable exclusions.

AERT argues that the provision of the Umbrella Policy AISLIC contends excludes coverage is neither clear nor unambiguous. Pl. Resp. Br. at 4 - 5.  AERT would have this Court read the Umbrella Policy as only applying the EXCLUSIONS provision to Coverage A. In Arkansas, where terms of the policy are clear and unambiguous, the policy language controls. *Essex*, 372 Ark. at 537. Having examined the Umbrella policies, the Court finds that the language, terms and provisions upon which AISLIC relies are not ambiguous.

---

[7]AERT argues that *Essex* should not apply because that case dealt with the damages resulting from a contractor's workmanship, whereas the present dispute hinges on allegations of defective manufacturing.  As such, AERT would have this Court distinguish *Essex* on this basis. However, in espousing the reasoning of *Essex*, the Court notes that virtually all of the relevant caselaw examining the pertinent questions of coverage as it relates to the interpretation of "occurrence," deal with contractor and subcontractor workmanship.  Thus, in adopting the *Essex* reasoning, the Court determines that what AERT asserts is a distinguishable basis for putting aside *Essex*, is nothing more that a distinction without difference under the applicable caselaw.

The section entitled "EXCLUSIONS," enumerated as section three, contains the

following:

> In addition to any applicable Exclusions in the underlying insurance, this policy does not apply to:
>
>      \*     \*     \*     \*     \*
>
> H.     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:
>
>     1.     Your product;
>     2.     Your work; or
>     3.     Impaired property;
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Pl. App. 086-090, 103-107, 130-134, 170-174, 186-190.

The Court construes the language in the policy in its plain, ordinary, and popular sense.

*McGrew*, 371 Ark. 567. There is nothing in the language of the Exclusions section neither

limiting its applicability to Coverage A. alone, nor removing Coverage B. from consideration.

Indeed, the term "this policy" unmistakably refers to the Commercial Umbrella Policy Form as a

whole.  In light of the fact that exclusionary clauses are generally enforced according to their

terms, *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, the Court looks at the exclusions for "Your

Product" as defined by the policies.

The Underlying Policies, which are incorporated in the Umbrella Policies, define "Your

Product" thus:

> 32.     Your Product means:

       a.       Any goods or products other than real property, manufactured, sold, handled, distributed or disposed by:

          (1)      You;
          (2)      Others trading under your name; or
          (3)      A person or organization whose business or assets you have acquired; and

       *      *      *

Your product includes:

       a.       Warranties or representations made at any time with respect to fitness, quality, durability, performance or use of your product; and
       b.       The providing of or failure to provide warnings or instructions.

Def. App. 026-028, 076-080, 127-131, 177-181; Pl. App. 239-243.

Comparing the pleadings in the underlying lawsuit against the terms and definitions of the policy, the Court finds that AISLIC properly denied coverage on the basis of the exclusions found in the policies. Section H of the policies excludes coverage for "[d]amages claimed for any loss, cost or expense . . . for the loss of use . . . repair, replacement, adjustment . . . of . . . Your product. . . ." "Your product" is defined as "any good or products . . . manufactured, sold . . . by you . . ." and includes, "warranties or representations made at any time with respect to fitness, quality, durability, performance or use of your product. . ." The definition also includes "the providing of or failure to provide warnings." The underlying litigation involves claims for damages based on allegations that AERT's products "have failed and will continue to fail prematurely" (Pl. App. 065, ¶ 9.8); the defects result in unpreventable and unsolvable fungal and mold growth (Pl. App. 058, ¶ ¶ 6.9 - 6.11); failure to provide sufficient warnings of the defects (Pl. App. 060, ¶ 7.2); and, representations as to fitness of the decking products (Pl. App. 058, ¶ ¶

6.4 - 6.5).

Despite AERT's assertions that the terms and provisions of the EXCLUSIONS section of the Umbrella Policies are only applicable to Coverage A. and do not apply to Coverage B., the Court fails to read the Policy in any light that would lead to such an interpretation.  To do so would require the Court to ignore its plain, ordinary, and popular sense.  Because the EXCLUSIONS section not only applies to both Coverage A. and Coverage B., but also corresponds precisely to the allegations set forth in the pleadings of the underlying lawsuit, the Court finds that AISLIC properly excluded coverage under the Umbrella Policies.

Accordingly, as a matter of law the Court finds that AERT's motion for summary judgment should be DENIED. And, because AISLIC has demonstrated that the policies entered into by the parties do not trigger a duty to defend AERT in the underlying lawsuits, a finding that its cross motion for summary judgment should be GRANTED.

### C.    Chapter 542 of the Texas Insurance Code

AERT has also moved for summary judgment against AISLIC under Chapter 542 of the Texas Insurance Code, also known as the Prompt Payment of Claims Act. The Prompt Payment of Claims Act prohibits insurers from delaying the payment of claims. *See* Tex. Ins. Code Ann. §§ 542.051-.061 (Vernon 2009).  The Texas Supreme Court has held that the Act "may be applied when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007).  Thus, "an insurer is liable for a violation of Chapter 542 . . . if it has a duty to defend a covered lawsuit and it fails to do so. . ." *Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co.*, Civ.A.No. H-08-2025, 2009 U.S. Dist. LEXIS 80645, *50 (S.D. Tex. 2009); *see also, Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 936 (N.D. Tex. 2009) (an insurer was not liable for

breach of Chapter 542 of Texas Insurance Code because the underlying lawsuits were not covered under the policy). Because AERT's claim asserting AISLIC owed a duty to defend has been denied, AERT is not entitled to summary judgment on this claim invoking the Prompt Payment of Claims Act.

### D.      Whether AISLIC is Entitled to Summary Judgment

AERT further argues that AISLIC's cross-motion for summary judgment should be denied because it failed to address the entirety of AERT's claims as asserted in the First Amended Complaint.  *See*, Pl. Resp. Br. at 30.  Specifically, AERT asserts that demand letters issued by the other defendants to the Underlying Lawsuits seeking a defense and indemnity from AERT require AISLIC to defend AERT from claims brought under the Umbrella Policies.  First Amend. Compl. ¶ ¶ 34, 35 (Doc. # 8). AISLIC responds that the coverage analysis for the claims in the present matter is identical for all claims for coverage relating to the Underlying Lawsuit, regardless of who makes them.  Def. Reply at 10.

On this point the Court agrees with AISLIC.  Whatever claims that might be brought against AERT by Lowe's Companies, Inc or the Weyerhaeuser Company are coextensive to the claims the Court has resolved in rending its decision. Accordingly, the Court finds that AISLIC's motion for summary judgment should not be denied.

## IV.      Conclusion

AERT's motion for partial summary judgment (Doc. # 15) is DENIED.  AISLIC's motion for summary judgment (Doc. # 22) is GRANTED.

So ORDERED this 30th day of September, 2009.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

24